**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RONALD FRONCKOWIAK,**
as an individual, and as Personal
Representative of the Estate of
**FELIX FRONCKOWIAK**, deceased,
and **REBECCA JAEGER**, an
individual,

      Plaintiffs,

v.

                                  Case No. 8:24-cv-863-WFJ-CPT

**KIA AMERICA, INC.**, a California
corporation,

      Defendant.

_____/

**<u>ORDER</u>**

Before the Court is Defendant Kia's Motion for Summary Judgment, Dkt. 56, to which Plaintiffs responded in opposition. Dkt. 59. Defendant Kia replied, Dkt. 60, and Plaintiffs filed a sur-reply. Dkt. 77. The Court considers Defendant Kia's supplemental authority, Dkt. 80, and Plaintiffs' corresponding supplemental brief. Dkt. 81. Additionally before the Court are Defendant Kia America, Inc.'s ("Kia") Motion to Exclude the testimony of Plaintiffs' expert witnesses Peter A. Hancock and David J. Bizzak, Dkt. 57, to which Plaintiffs responded in opposition, Dkt. 58-1, and Plaintiffs' Motion for Leave to file a Supplemental Declaration of Peter A. Hancock, Dkt. 78, to which Defendant responded in opposition. Dkt. 83. The Court

heard oral argument regarding all pending motions on February 13, 2026. Dkt. 79. Upon careful consideration, the Court grants-in-part Defendant Kia's Motion to Exclude, grants Defendant Kia's Motion for Summary Judgment, and denies Plaintiffs' Motion for Leave to File a Supplemental Declaration.

## BACKGROUND

This dispute arises from the death of 88-year-old Ronald Fronckowiak (the "Decedent") by carbon monoxide toxicity. Dkt. 32 ¶¶ 9–11. On the evening of February 22, 2022, Rebecca Jaeger ("Jaeger"), age 72, drove the Decedent in his 2017 Kia Sorento (the "vehicle") from the hospital—where he was being treated for a dislocated shoulder and confusion—to the couple's rental home in Spring Hill, Florida. Dkt. 56-1 at 7–8. Jaeger had never driven the vehicle before February 22, 2022. *Id.* at 14. Decedent rode in the right-front passenger seat, *id.* at 9, while Jaeger parked the vehicle in the garage of their rental home. *Id.* at 10. She then closed the garage door. *Id.* at 10–11. Jaeger exited the vehicle, assisted the Decedent out of the vehicle, and they both proceeded inside with the key fob, which was ultimately left on the kitchen table. *Id.*; *see* Dkt. 56-4 at 11. Tragically, they left the car running in the enclosed single-car garage. *See* Dkt. 56-4 at 12 (showing a police photo of the vehicle in the garage).

The next morning, officers from the Hernando County Sheriff's Office performed a wellness check on the couple after the Decedent's family had not made

contact with him. Dkt. 32 ¶ 10; Dkt. 56-4 at 11. Decedent was found deceased in the room next to the garage, and it was later determined that he died from carbon monoxide toxicity. Dkt. 32 ¶¶ 9–10; Dkt. 56-4 at 11. Jaeger was found alive but unconscious in a room further from the garage, having sustained injuries due to carbon monoxide exposure. Dkt. 32 ¶¶ 10, 11; Dkt. 56-4 at 11.

The 2017 Kia Sorento is designed with keyless ignition technology, but does not include an automatic shutoff feature. Dkt. 56-4 at 43. 83% of 2017 model year vehicles were found to not offer an automatic shutoff feature, and 91% did not include this as a standard feature. *Id.* at 45. The National Highway Traffic Safety Administration ("NHTSA")—the national automotive regulatory agency—considered automatic shutoff, but decided not to require it. *Id.* at 34–36 (describing the Notice of Proposed Rule Making ("NPRM") for NHTSA Federal Motor Vehicle Safety Standard ("FMVSS") 114, which proposed requiring "an audible alert to sound outside the vehicle if the propulsion system is running," but explicitly declined to propose "regulatory text to require . . . automatic shut off systems").

The 2017 Kia Sorento does include an external auditory warning chime, which sounds when the vehicle is left running. *Id.* at 49. This warning complied with the relevant industry standards of 2017; specifically, Society of Automotive Engineers' ("SAE") recommended practice J2948. *See id.* at 33–34 ("An externally audible or visual alert shall be activated when the starting system is in

ACCESSORY, ELECTRICAL, or RUN MODE, all doors become closed, and an electronic key code carrying device (e.g., keyfob) is not present in the vehicle."). The chime was measured to last 5.0 seconds at 73.8 decibels. *Id.* at 46–51. When compared with 14 peer 2017 model SUVs, this was found to be the longest and the second loudest external auditory warning. *Id.*

On February 21, 2024, Plaintiffs brought the instant action in state court, Dkt. 1-3 at 6–17, which was later removed to the United States District Court for the Middle District of Florida. Dkt. 1. The operative complaint alleges claims of: strict liability—manufacturing defect (Count I); strict liability—design defect (Count II); strict liability—failure to warn (Count III); negligence (Count IV); and negligence—failure to recall (Count V). Dkt. 32.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) (noting a court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party"). Once the moving party satisfies its initial burden, it shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e), (c). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

A court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992).

## DISCUSSION

### I.     Count II: Strict Liability—Design Defect

"A design defect claim under Florida law requires '[f]irst, that the product is defective; and second, that such defect caused plaintiff's injuries.'" *Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342, 1350–51 (11th Cir. 2023) (quoting *Liggett Grp., Inc. v. Davis*, 973 So. 2d 467, 475 (Fla. 4th DCA 2007)). A design defect claim also requires expert testimony to establish. *See Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009) (collecting cases) (holding that a plaintiff's "failure to offer expert evidence forecloses any claim based on a design defect").

"Two different tests determine whether a product is defective: (1) the consumer expectations test and (2) the risk utility test." *Cates*, 73 F.4th at 1351. The Eleventh Circuit teaches, "[a]s between the two tests, the consumer expectations test is the default under Florida law." *Id.* (citing *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 510 (Fla. 2015)). The Florida Supreme Court in *Aubin* reversed the lower court for applying the risk utility test. 177 So. 3d at 519–520. The *Aubin* court held that "in approaching design defect claims," Florida law "adhere[s] to the consumer expectations test[.]" *Id.* at 510. The Eleventh Circuit has found that "*Aubin* rejected the risk utility test" because it "fails to consider the crucial link between a manufacturer establishing the reasonable expectations of a product that in turn cause

consumers to demand that product" and "places upon the plaintiff an additional burdensome element of proof, requiring the injured consumer to step into the shoes of a manufacturer and prove that a reasonable alternative design was available to the manufacturer." *Cates*, 73 F.4th at 1351 (quoting *Aubin*, 177 So. 3d at 506–07).

The risk utility test has been used by some lower courts, reserved for "products [that] may be too complex for a logical application of the consumer expectations test." *Cavanaugh v. Stryker Corp.*, 308 So. 3d 149, 155 (Fla. 4th DCA 2020) (applying the risk utility test to a "complex medical device available to an ordinary consumer only as an incident to a medical procedure").

"The applicability of the consumer expectations test 'does not depend necessarily on a product's complexity in technology or use,' but rather depends on whether 'prolonged use, knowledge, or familiarity of the product's performance by consumers is sufficient to allow consumers to form reasonable expectations of the product's safety.'" *Cavanaugh*, 308 So. 3d at 155 n.4 (citation modified).

The Court finds that Plaintiffs have failed to establish that the vehicle's keyless ignition technology and related warning features are so complex as to be unfamiliar to the average consumer and thus require an application of the risk utility test. *See* Dkt. 56-4 at 43 (showing that a vast majority of 2017 model year United States non-exotic vehicles included keyless ignition technology); *id.* at 46–49 (showing that all but one of the 14 peer 2017 model year SUVs analyzed had similar

warning features). Other courts have held likewise with comparable automotive technology. *See Patt v. Volkswagen Group of Am., Inc.*, No. 22-CV-21585, 2024 WL 1675301, at *1, *6 (S.D. Fla. Apr. 18, 2024) (finding that Audi's pre sense® rear technology, which "detect[s] impending rear-end collisions and initiate[s] preventive measures to protect occupants from injury," was not so complex as to require the risk utility test, and that the consumer expectations test properly applied); *Force v. Ford Motor Co.*, 879 So. 2d 103, 110 (Fla. 5th DCA 2004) (holding that the consumer expectations test was appropriate for the seat belt technology of the Ford vehicle at issue). Accordingly, the Court will analyze Plaintiffs' design defect claim under the default consumer expectations test.

A product is defective under the consumer expectations test if it "failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner." *Aubin*, 177 So.3d at 503. "[S]o long as the product poses no unreasonable dangers for consumer use," a manufacturer is "under no duty to produce a fail-safe product." *Veliz v. Rental Serv. Corp. USA, Inc.*, 313 F. Supp. 2d 1317, 1330 (M.D. Fla. 2003) (citing *Mendez v. Honda Motor Co.*, 738 F. Supp. 481, 484–485, (S.D. Fla. 1990)).

Whether a product is "unreasonably dangerous" is "based on an objective standard and not the viewpoint of any particular customer." *Liggett Grp.*, 973 So. 2d at 475 (citing *Jennings v. BIC Corp.*, 181 F.3d 1250, 1256 (11th Cir. 1999)). While

"[w]hether a product is unreasonably dangerous is normally a question for the jury", the Court is not prohibited from making that determination where the record evidence supports it. *Hernandez v. Altec Envtl. Prods., LLC*, 903 F. Supp. 2d 1350, 1359 (S.D. Fla. 2012) (citing *Norton v. Snapper Power Equip., Div. of Fuqua Indus., Inc.*, 806 F.2d 1545, 1545 (11th Cir. 1987); *Jennings*, 181 F.3d at 1255).

Here, Plaintiffs provides no relevant or reliable evidence to establish that the vehicle failed to perform as safely as an ordinary consumer would expect or that the vehicle was unreasonably dangerous. Plaintiffs' expert Peter A. Hancock ("Hancock") provides opinions in his report that are not directly relevant to the design defect analysis at hand. *See, e.g.*, Dkt. 59-3 at 141 ("The vehicle appears to have provide [sic] insufficient cues as to its continuing, activated status."); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (holding that expert testimony must be "relevant to the task at hand").

Although Plaintiffs' expert David J. Bizzak ("Bizzak") provides more relevant opinions in his report, these do not necessarily signify that the vehicle failed to perform as safely as expected or was unreasonably dangerous. *See, e.g.*, Dkt. 59-2 at 26–27 ("The potential that vehicle operators would exit a vehicle with the key fob without first shutting down the engine is reasonably foreseeable . . . . The most effective means of preventing or reducing the potential for carbon monoxide poisoning is to incorporate an automatic shutdown . . . ."). Further, the key opinion

provided in Bizzak's report that addresses the alleged design defect is conclusory, *see id.* ("The subject Kia Sorento was defective by virtue of the fact that it was not equipped with features necessary to guard against carbon monoxide poisoning resulting from an operator inadvertently failing to turn off the ignition before exiting the vehicle."), as no discernable methodology is provided. *See Chapman v. P&G Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) ("[N]either *Daubert* nor Federal Rule of Evidence 702 requires a trial judge to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. Instead, the judge is free to conclude that there is simply too great an analytical gap between the data and the opinion proffered." (citation modified)).

Defendant's expert provides ample evidence that the vehicle performed as safely as an ordinary consumer would expect. There is no genuine dispute of material fact that the vehicle complied with all relevant industry standards in 2017, such as SAE J2948, which required an externally audible or visual warning when a vehicle is left running with the doors closed and the key fob not present in the vehicle. *See* Dkt. 56-4 at 33–36. This evinces that the vehicle performed as would be expected by an ordinary consumer. *See Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1358 (11th Cir. 2020) ("Industry standards—i.e., the products actually produced by manufacturers—directly inform consumers' reasonable expectations." (Tjoflat, J., dissenting) (citing *Aubin*, 177 So.3d at 503)).

10

Plaintiffs further raise an alternative design—an automatic shutoff—and argue that its absence makes the vehicle unreasonably dangerous. *See* Dkt. 59 at 8–10. But an automatic shutoff feature would not likely have informed an ordinary consumer's expectations of safety. Only 17% of 2017 model year vehicles offered such a feature, and merely 9% included it as standard. Dkt. 56-4 at 45.

However, this argument is further undermined by the dangers that then arise from this alternative design. As mentioned, NHTSA itself declined to require an automatic shutoff feature, *id.* at 35 ("NHTSA is not proposing regulatory text to require . . . automatic shut off systems"), citing certain adverse scenarios that could result from such a feature. *See id.* at 34 ("[W]e considered requiring the engine to shut down after a specified period of time, however, there are many situations in which a driver intends to leave some electrical system or the engine in the vehicle running without his or her presence. An example is leaving a passenger with heat or air conditioning on while the driver runs an errand, or keeping the engine running to prevent the inability to restart the engine in a very cold climate."). Defendant's expert provides specific examples of children dying from heat-exposure after being left in a running car with AC, where the car then automatically shut off. *See id.* The Court finds that the undisputed dangers associated with the automatic shutoff feature demonstrate that its absence did not render the vehicle's existing design unreasonably dangerous. As Prosser noted,

11

> [t]he maker is not required to design the best possible product, or one as good as others make, or a better product than the one he has, so long as it is reasonably safe. But the fact that others are making similar products with a safer design may be important evidence bearing upon the defendant's reasonable care. Likewise the fact that others make use of the same design is evidence for the defendant, although it is not always conclusive.

Prosser, The Law of Torts 644–45 (4th ed. 1978) (cited in *Husky Indus., Inc. v. Black*, 434 So. 2d 988, 991 (Fla. 4th DCA 1983).

Accordingly, there is no genuine dispute of material fact that Plaintiffs cannot prevail under the consumer expectation test. The Court finds that no reasonable jury could find for Plaintiffs as to their design defect claim. Thus, the Court grants Defendant Kia's Motion for Summary Judgment as to Count II.

## II.    Count III: Strict Liability—Failure to Warn

"To succeed on a failure-to-warn claim [under Florida law], [a] 'plaintiff must show (1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product.'" *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021) (quoting *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017)).

"While in many instances the adequacy of warnings is a question of fact, the Florida Supreme Court has held that it can be resolved as a question of law where the warning is accurate, clear, and unambiguous." *Farias v. Mr. Heater, Inc.*, 684 F.3d 1231, 1233 (11th Cir. 2012) (citation modified) (quoting *Felix v. Hoffmann-*

12

*LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989)). "To warn adequately, the product label must make apparent the potential harmful consequences. The warning must be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." *Id.* (quoting *Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002)). "The adequacy of a warning is determined by a 'reasonable person' standard, rather than on each particular plaintiff's subjective appreciation of the danger." *Id.* at 1233–34 (citation modified) (quoting *Byrnes v. Honda Motor Co., Ltd.*, 887 F. Supp. 279, 281 (S.D. Fla. 1994).

Here, Plaintiffs fails to provide evidence to establish that the relevant warnings were inadequate. Plaintiffs' expert Hancock opines that there was an "[a]bsence of effective, explicitly designed status warning cues," Dkt. 59-3 at 140; however, this is provided in a conclusory fashion with no articulable methodology. *See Chapman*, 766 F.3d at 1305. On the other hand, Plaintiffs' expert Bizzak claims that "[t]he operator's manual for the [vehicle] does not inform the owner that the vehicle is equipped with an audible alert to inform him/her if they should exit the vehicle with the key fob without shutting off the ignition." Dkt. 59-2 at 26.

The Court instead finds that the vehicle provided warnings that were "accurate, clear, and unambiguous." *See Farias*, 684 F.3d at 1233–34. In response to Bizzak's statement that the vehicle's manual did not inform the owner of the meaning of the external auditory warning chime, the record shows, *see* Dkt. 56-6 at

13

42, that the owner's manual in fact states the following: "when the ENGINE START/STOP button is in the ACC position or above, if any door is opened, the system checks for the smart key. If the smart key is not in the vehicle, a message 'key is not in the vehicle' will appear on the LCD display. And if all doors are closed, the chime will sound for 5 seconds." *Id.* The evidence thus directly contradicts Plaintiffs' argument that "the owner's manual . . . does not disclose or explain the external alert feature in a way that informs users what the alert even means." Dkt. 59-1 at 11.

The record establishes that this external auditory warning chime—which complied with the relevant industry standards, *see* Dkt. 56-4 at 33–36 (requiring "[a]n externally audible or visual alert" when a vehicle is on, all doors are closed, and the key fob is not in the vehicle)—was the longest and one of the loudest, when evaluated against a number of other comparable SUVs. *See id.* at 46–51 (finding that the chime lasted 5.0 seconds at 73.8 decibels, compared to eight vehicles that had no external auditory warning and five others that lasted from 0.7 to 4.8 seconds at a range of 62.1 to 92.6 decibels). The vehicle also included visual cues. *See id.* at 22–32 (describing various visual cues, including a "No Key Detected" message on the instrument panel display and illuminated dashboard and center screen displays, all indicating that the engine remained running). Further, the owner's manual for the vehicle provides warnings regarding the danger of carbon monoxide exposure

resulting from the vehicle running in an enclosed space. *See* Dkt. 56-4 at 19 (showing multiple warnings present in the owner's manual that describe the dangers of carbon monoxide exposure, such as: "Do not inhale exhaust fumes or leave your engine running in a[n] enclosed area for a prolonged time. Exhaust fumes contain carbon monoxide, a colorless, odorless gas that can cause unconsciousness and death by asphyxiation.").

And, as an obvious matter, the danger is quite evident; everyone knows that consequences of leaving a car running in a closed garage could be catastrophic. And a gasoline powered car that is five years old makes noise while idling in park that can be heard clearly in an enclosed garage.

Although the adequacy of a warning is measured by an objective "reasonable person" standard, the Court notes that the record shows that at the time of the incident, both Jaeger and the Decedent were subjectively aware that the ignition button must be pressed for the vehicle to shut off, that the vehicle would not shut off on its own, and that carbon monoxide exposure could result from the vehicle being left running in the garage. Dkt. 56-1 at 18 (showing Jaeger respond affirmatively to the questions: "[I]t was important to you to turn [the vehicle] off manually because you know it didn't turn itself off, right?" and "[Y]ou knew that if you didn't . . . turn the vehicle off and you parked it in an attached garage, then it could leak carbon monoxide into the garage or into the home, correct?"); Dkt. 56-2 at 5 (showing the

son of the Decedent respond affirmatively to the question: "He knew that when he got out of the vehicle, he had to turn off the ignition?").

Accordingly, there is no genuine dispute of material fact that Plaintiffs cannot establish that the vehicle's warnings were inadequate. The Court finds that no reasonable jury could find for Plaintiffs as to their failure to warn claim. Thus, the Court grants Defendant Kia's Motion for Summary Judgment as to Count III.

## III.    Count IV: Negligence

In addition to their strict liability claims, Plaintiffs also bring a claim of negligence in alleging that Defendant Kia "failed to use reasonable care and was negligent in the marketing, advertising, and distributing the 2017 Kia Sorento." Dkt. 32 ¶ 53. "Negligence may occur at any stage of the design, manufacturing, or marketing process." *Cooper*, 653 F. Supp. 2d at 1226. "To prove any products liability claim sounding in negligence, whether negligent design, negligent manufacture, or the negligent failure to provide adequate warnings or instructions, a plaintiff must establish (1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the product was defective or unreasonably dangerous." *Id.* (citation omitted); *see Siemens Energy & Automation, Inc. v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998); *R.J. Reynolds Tobacco Co. v. Nelson*, 353 So. 3d 87, 89–90 (Fla. 1st DCA 2022). Even if the Court were to grant

16

that Defendant Kia owed Plaintiffs a relevant duty of care, Plaintiffs have failed to present evidence that could establish that the vehicle was defective or unreasonably dangerous.

Here, Plaintiffs allege that Defendant Kia "knew (or should have known) of the keyless ignition engine-left-running failure mode and the severe, foreseeable CO hazard in attached-garage contexts, and failed to implement reasonable safeguards despite feasible alternatives." Dkt. 9 at 13. However, in its analysis of Count II, the Court has already found that there is no genuine dispute of material fact that the vehicle was not unreasonably dangerous and thus a defect cannot be established. *See supra*; *see also O'Bryan v. Ford Motor Co.*, 18 F. Supp. 3d 1361, 1366 (S.D. Fla. 2014) ("For claims in negligence and strict liability, a plaintiff must first prove that the product was defective." (citing *Diversified Products Corp. v. Faxon*, 514 So. 2d 1161 (Fla. 1st DCA 1987); *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla. 1976))).

Additionally, as previously discussed, the vehicle was in compliance with the relevant industry standards, such as SAE J2948. Dkt. 56-4 at 33–36 (requiring an audible or visual warning when a vehicle is left on with the doors closed and the key fob is not in the vehicle); *see Crawford*, 977 F.3d at 1358 ("[U]nder a general negligence approach that looks to whether the defendant acted as a reasonably careful designer or manufacturer under the circumstances . . . [i]ndustry standards

17

are strong evidence of what constitutes reasonable care." (Tjoflat, J., dissenting) (citing *Seaboard Coast Line R. Co. v. Clark*, 491 So. 2d 1196, 1198 (Fla. 4th DCA 1986))). The record also shows that 91% of 2017 model year vehicles did not offer automatic shutoff as a standard feature, and, as of 2024, 52% of vehicles still do not offer automatic shutoff as a standard feature. Dkt. 56-4 at 45–46.

Accordingly, there is no genuine dispute of material fact that Plaintiffs cannot establish that the vehicle was defective or unreasonably dangerous. The Court finds that no reasonable jury could find for Plaintiffs as to their negligence claim. Thus, the Court grants Defendant Kia's Motion for Summary Judgment as to Count IV.

### IV.    Counts I & V: Manufacturing Defect and Failure to Recall

Plaintiffs have withdrawn Count I, alleging a manufacturing defect, and Count V, alleging failure to recall. Dkt. 59 at 2. Accordingly, the Court grants Defendant Kia's Motion for Summary Judgment as to Counts I and V.

### V.    Plaintiff's Motion for Leave to File a Supplemental Declaration

The Court previously designated Plaintiffs' expert disclosure deadline as August 18, 2025, with a discovery cut-off set for January 2, 2026. Dkt. 33. Expert disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "An expert report may be supplemented, pursuant to [Federal Rule of Civil Procedure] 26(e), when the party learns that the original disclosure was incomplete or incorrect, but may not be supplemented in order to cure

18

a major omission or to remedy an expert's inadequate or incomplete preparation." *Lincoln Rock, LLC v. City of Tampa*, No. 8:15-cv-1374-T-30JSS, 2016 WL 6138653, at *2 (M.D. Fla. Oct. 21, 2016) (collecting cases); *see Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012) ("Rule 26 imposes a duty on parties to comply with the disclosure deadlines. It grants them no right to produce information in a belated fashion." (citation modified)). "Courts have broad discretion to exclude untimely-disclosed expert reports, even ones designated as 'supplemental' reports." *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, No. 20-82102-CIV, 2022 WL 3356621, at *2 (S.D. Fla. Aug. 15, 2022) (collecting cases).

Here, on February 5, 2026—months past the Court-imposed expert disclosure and discovery deadlines—Plaintiffs filed their motion seeking leave to supplement Hancock's report. Dkt. 78. Plaintiffs do not seek to correct any aspect of this report, but instead merely seek to add details regarding Hancock's belated inspection of an exemplar 2017 Kia Sorento performed on February 3, 2026. *See* Dkt. 78-1. Plaintiffs fail to cite to any authority that might permit their late-filed supplement and provide no explanation as to why this inspection was not completed prior to Hancock's initial

19

report. *See* Dkt. 78. Accordingly, the Court denies Plaintiffs' Motion for Leave to file a Supplemental Declaration.[1]

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Kia America, Inc.'s Motion to Exclude the testimony of Plaintiffs' expert witnesses Peter A. Hancock and David J. Bizzak, Dkt. 57, is **GRANTED-IN-PART**, and the testimony of Plaintiffs' expert witnesses is considered as described in the order;

2. Defendant Kia America, Inc.'s Motion for Summary Judgment, Dkt. 56, is **GRANTED** as to all Counts;

3. Plaintiffs' Motion for Leave to file a Supplemental Declaration of Peter A. Hancock, Dkt. 78, is **DENIED**;

4. The Clerk is **DIRECTED** to enter final summary judgment in favor of Defendant Kia America, Inc. and against Plaintiffs Ronald Fronckowiak, as an individual, and as Personal Representative of the Estate of Felix Fronckowiak, deceased, and Rebecca Jaeger, an individual, as to all Counts; and

---

[1] On January 5, 2026—past the Court-imposed deadlines—in their response to Defendant Kia's Motion for Summary Judgment, Plaintiffs attempted to supplement both Hancock and Bizzak's reports via further declarations from each expert, which provided additional information regarding methodology and opinions. Dkt. 59-2 at 1–13; Dkt. 59-3 at 1–11. Plaintiffs fail to provide an explanation as to why this information was not included in the initial reports. *See id.* Accordingly, the Court declines to consider these late-filed submissions. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless."); *see also Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." (citation modified)).

5. The Clerk is **DIRECTED** to terminate all pending motions and deadlines and to close the case.

**DONE AND ORDERED** at Tampa, Florida, on April 15, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

21